**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

HOLLY SALZMAN,

       Plaintiff,

v.                                      CV No. 18-779 CG/LF

UNITED STATES OF AMERICA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant United States of America's *Motion in Limine to Exclude Expert Testimony* (the "Motion"), (Doc. 54), filed November 19, 2019; Plaintiff Holly Salzman's *Response to Defendant's Motion in Limine to Exclude Expert Testimony* (the "Response"), (Doc. 59), filed December 10, 2019; and Defendant's *Reply to Plaintiff's Response (Doc. 59) to Motion in Limine to Exclude Expert Testimony* (the "Reply"), (Doc. 62), filed December 20, 2019. In accordance with Federal Rule of Civil Procedure 73(b), all parties have consented to the Undersigned to conduct dispositive proceedings and issue a final judgment in this matter. *See* (Doc. 17); 28 U.S.C. § 636(c). Having reviewed the parties' filings and the relevant law, the Court finds the Motion is well-taken and shall be **GRANTED IN PART** and **DENIED IN PART**.

## I.    Background

This case arises from medical care Plaintiff Holly Salzman received at the Raymond G. Murphy Veterans Affairs Medical Center (the "VA") in Albuquerque, New Mexico. (Doc. 54 at 1). On August 19, 2016, Ms. Salzman underwent left-knee surgery at the VA, performed by orthopedic surgeon Dr. Paul D. Lesko, M.D. (Doc. 1 at 3).

Following the surgery, Ms. Salzman experienced atypical and continued pain in her left knee. *Id.* For the next two months, Ms. Salzman returned to the VA several times complaining of left knee pain and underwent a series of medical procedures to address her continued complaints of pain and swelling, including injections, ultrasounds, X-rays, and MRIs. (Doc. 54-2 at 3).

On October 20, 2016, approximately two months after her initial knee surgery at the VA, Dr. Lesko excised a Baker's cyst from Ms. Salzman's left knee and placed her in a knee immobilizer. (Doc. 54-2 at 3). Eleven days later, on October 31, 2016, Ms. Salzman returned to the VA for a post-operative appointment and was seen by Dr. William J. Skelly, M.D., who ordered a ten-day Keflex prescription. (Doc. 1 at 5). Ms. Salzman again returned to the VA on November 4, 2016, because she "was bleeding through her bandage and steri-strips" and was examined by Dr. Paul Joseph Johnson, M.D. *Id.* At her November 4, 2016, appointment, Dr. Johnson discovered a large hematoma in Ms. Salzman's knee and removed clotted blood from her incision site. *Id.* at 5-6.

On November 7, 2016, Ms. Salzman sought treatment at the VA because she was suffering from immobilizing knee pain, and the swelling in her leg had extended through her thigh. (Doc. 1 at 6). Dr. Skelly again treated Ms. Salzman at the VA orthopedic clinic and aspirated her knee fluid. (Doc. 54-2 at 3). Instead of sending the knee aspirate to the laboratory for culture and sensitivity testing, Dr. Skelly discarded the aspirate and applied a brace to Ms. Salzman's leg. *Id.*

Three days later, Ms. Salzman returned to the VA complaining of intolerable pain and swelling. (Doc. 1 at 7). Ms. Salzman underwent an MRI, was prescribed narcotic pain medication, and was discharged that afternoon. *Id.* The following day, on

November 10, 2016, Ms. Salzman was treated at the University of New Mexico Hospital Emergency Room, where her knee was diagnosed as septic. (Doc. 54 at 2). Ms. Salzman alleges the care she received at the VA, and specifically the physicians' failure to test her knee aspirate for infection, was negligent. *Id.*

Ms. Salzman filed suit in the United States District Court for the District of New Mexico on August 15, 2018, alleging the VA physicians' failure to properly identify and treat her knee infection amounted to medical malpractice. (Doc. 1 at 9-10). In the parties' *Joint Status Report*, Ms. Salzman identified orthopedic surgeon Neil C. Small, M.D., and Dustin Richter, M.D., as possible "fact and expert" witnesses. (Doc. 19 at 8-11). The case was set on a 175-day discovery schedule, and Ms. Salzman's expert witness disclosures were due on May 31, 2019. (Doc. 21); (Doc. 54 at 3).

In her initial expert witness disclosures, Ms. Salzman identified Dr. Small as her retained expert. (Doc. 54 at 3). After receiving Dr. Small's expert report, Defendant contacted Ms. Salzman and expressed concerns over the sufficiency of his report and the bases for his conclusions. *Id.* As a result, the parties jointly moved to extend the deadline for Ms. Salzman's Rule 26(a)(2) expert disclosures until August 21, 2019. *Id.* Nearly a month after the extended August 21, 2019, expert disclosure deadline, Ms. Salzman served Defendant with an amended expert report authored by Dr. Small. *Id.* In addition, Ms. Salzman identified Dr. Richter, her treating physician, for the first time as a non-retained expert. *Id.* Discovery closed the following month, on October 30, 2019. (Doc. 37 at 1). The case was set for trial in Albuquerque, New Mexico, and is scheduled to begin on April 21, 2020. (Doc. 49).

## II.    Analysis

Defendant now seeks to exclude the expert testimony of Ms. Salzman's retained expert, Dr. Small, and her treating physician, Dr. Richter. (Doc. 54 at 3). Defendant presents two arguments against the admission of both experts: neither Dr. Small nor Dr. Richter was properly disclosed under Federal Rule of Civil Procedure 26(a)(2), and neither expert's opinion satisfies the admissibility standards of Federal Rule of Evidence 702. *Id.* at 4, 14. In response, Ms. Salzman contends Dr. Small's expert disclosure was "sufficient to advise Defendant not only of the substance of Dr. Small's opinions, but how he arrived at those opinions[.]" (Doc. 59 at 6). In addition, Ms. Salzman contends Dr. Small's report is based on "experience and clinical judgment," and thus satisfies the Rule 702 standard. *Id.* at 2-6. Next, Ms. Salzman admits that she neglected to initially disclose Dr. Richter, but she contends her omission will subject Defendant to neither prejudice nor surprise. *Id.* at 11. For these reasons, Ms. Salzman requests the Court deny Defendant's Motion.

### A.  Disclosure Deficiencies

Federal Rule of Civil Procedure 26 governs disclosure of expert witnesses and the use of expert testimony at trial. Pursuant to Rule 26, the disclosure requirements vary depending on whether the expert is "retained or specially employed" under 26(a)(2)(B), or "non-retained" under 26(a)(2)(C). A party's classification of an expert as retained or non-retained dictates the scope of testimony and opinions they may proffer. *Skarda v. Johnson & Johnson*, 2014 WL 12792345, at *3 (D.N.M. 2014) (unpublished). Specifically, a non-retained expert may only provide testimony related to his or her opinions that were formed during their participation in the underlying events in the case.

*Id.* at *3. Conversely, a retained expert may opine on his or her review of records or reports tendered by other experts, including materials prepared in anticipation of trial. *Id.*

If a party fails to identify an expert witness under Rule 26(a), they cannot use that witness's testimony during pretrial or trial proceedings unless the failure "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In determining whether a party's failure to comply with Rule 26(a) was "justified or harmless," the district court is entrusted with "broad discretion." *Jacobsen v. Deseret Book Company*, 287 F.3d 936, 953 (10th Cir. 2002). In reaching this decision, "a district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness[]" of the party's non-disclosure. *Id.* Nonetheless, the court should consider the following pertinent factors: (1) the prejudice to the opposing party; (2) "the ability of the party to cure the prejudice;" (3) the disruption to trial; and (4) the "moving party's bad faith or willfulness." *Id.*

### a. Plaintiff's Expert Dr. Neil C. Small

Defendant first contends Ms. Salzman's retained expert, Dr. Small, was not properly disclosed under Rule 26(a)(2)(B). (Doc. 54 at 6-7). Specifically, Defendant contends Dr. Small did not provide the "basis and reasons" for his opinions, as required by Rule 26(a)(2)(B)(i). *Id.* In response, Ms. Salzman argues Dr. Small adequately outlines the basis for his opinions, including his "education, training and experience during more than thirty-five years of orthopedic surgery practice and having offered opinions on more than 550 legal cases in his field." (Doc. 59 at 3).

Rule 26 does not require a formulaic recitation of how each expert opinion is supported by specific evidence. Rather, the expert's report "is intended to set forth the substance of the direct examination," and "should be written in a manner that reflects

the testimony to be given by the witness[.]" Fed. R. Civ. P. 26, advisory committee's note to 1993 amendment. This standard comports with the purpose of expert reports as contemplated by Rule 26: "to minimize the expense of deposing experts, and to shorten direct examination and prevent an ambush at trial." *McCoy v. Whirlpool Corp.*, 214 F.R.D. 646, 652 (D. Kan. 2003).

In his report, Dr. Small explains the "substantive rationale" in support of his conclusions was founded "by virtue of" his "education, training and experience during more than thirty-five years of orthopedic surgery and spine practice," and his "extensive forensic experience." (Doc. 54-1 at 1); *see McCoy*, 214 F.R.D. at 655. Dr. Small also provides a list of records he reviewed in reaching his conclusions, including records from twelve different physicians who treated Ms. Salzman or were otherwise involved with her medical care. (Doc. 54-1 at 1-2). After detailing Ms. Salzman's medical treatment and surgical history, Dr. Small sets forth seven opinions regarding the delay in Ms. Salzman's diagnosis, the proximate cause of her knee injury, and the likelihood of an infection reoccurring. *Id.* at 6.

Defendant's objections ignore the plain language of Dr. Small's report and the extensive evidence that he cites to support his conclusions. For example, Defendant contends Dr. Small "does not explain why he believes Plaintiff's complaints were ignored or marginalized, what should have been done, or how these actions or omissions resulted in a delayed diagnosis." (Doc. 54 at 6-7). These questions, as formulated in Defendant's Motion, can be readily answered from reading the report in its entirety: Dr. Small believes Ms. Salzman's complaints were ignored because her knee aspirate was discarded even though she continued to complain of pain, swelling, and

fever; Dr. Skelly should have tested the aspirate on November 7, 2016; and Dr. Skelly's decision to not test the aspirate resulted in a delayed diagnosis. *See* (Doc. 54-2 at 6).

Similarly, Defendant contends "Dr. Small provides no rationale for his conclusion [that by discarding the knee aspirate Dr. Skelly delayed the identification of the septic arthritis] and does not explain why he believes the septic arthritis could have been identified on November 7, 2016." (Doc. 54 at 7). However, in the preceding paragraphs before this conclusion is rendered, Dr. Small explains that Ms. Salzman's "knee aspirate was voluminous," and she produced "continued complaints of pain, swelling and fever." (Doc. 54-2 at 8). Despite this, Dr. Small explains, "th[e] aspirate was discarded and was not sent for synovial fluid analysis or culture and sensitivity testing." *Id.*

Defendant's additional objections suffer from the same fatal flaw: they view Dr. Small's conclusions in a vacuum, narrowly viewing his report and demanding that he follow the legal specificity that would be expected of an attorney. However, after even a cursory read of the report, a lay person could easily surmise what Dr. Small's conclusions are, how he reached them, and his supporting rationale — even if he does not articulate his findings precisely in that order. The pinpoint precision Defendant demands of Dr. Small's report is plainly not required under Rule 26(a)(2)(B). *See McCoy*, 214 F.R.D. at 652 (explaining that Rule 26(a)(2)(B) "does not require that a[n expert] report recite every minute fact or piece of scientific information that might be elicited on direct examination").

Moreover, if Defendant sought information outside of that required for an adequate Rule 26(a)(2)(B) disclosure, it was free to depose Dr. Small. Tellingly, Defendant declined to take Dr. Small's deposition, did not schedule a Rule 35 medical examination, and made no attempt to earlier address its concerns over Dr. Small's

report with the Court. (Doc. 59 at 8). Defendant had ample opportunity to probe the bases of Dr. Small's report, and further ascertain the exact nexus between each of his conclusions and the supporting facts. At this juncture, the Court will not exclude Dr. Small's testimony because Defendant "wishes it knew more" about the report, when it had several months to question Dr. Small with the benefit of pointed questioning proffered by defense counsel at a deposition. *See McCoy*, 214 F.R.D. at 652 (explaining "the purpose of a detailed and complete expert report, as contemplated by Rule 26(a), is to *minimize the expense of deposing experts*," not to negate the necessity of ever taking an expert's deposition) (emphasis added).

The decision to not depose Dr. Small, but instead rely on a Motion to Exclude, was a risk. This litigation tactic allows defense counsel to seek exclusion of an expert's testimony while simultaneously not expending any resources to depose the witness. *See King v. USA*, CV No. 15-480 JCH/CG, Doc. 71 at 3 (Jan. 5, 2017) (unpublished) (explaining that "[i]f Defendant had concerns about the conclusory nature of the report, [] Defendant had ample time to depose [the doctor] or file a motion to compel additional discovery relating to [the doctor's] opinions."). Unfortunately, this risk did not result in a favorable outcome for Defendant in this case, and the opportunity to depose Dr. Small has now elapsed.

The Court's holding is consistent with the purpose of Rule 26: "to allow the opposing party a reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Henderson v. National R.R. Passenger Corp.*, 412 Fed. Appx. 74, 80-81 (10th Cir. 2011) (unpublished). Indeed, Defendant has already arranged for its own expert to testify at trial, and it has over four months to effectively prepare for cross examination of Dr. Small. Thus, while there is no

precise formula for identifying the exact amount of detail required in an expert witness report under Rule 26(a)(2)(B)(i), Dr. Small's report satisfies the general aims of Rule 26 and appropriately mitigates any potential for unfair surprise or prejudice facing Defendant at trial. *See Jager v. Mulheron*, CV No. 18-743 GBW/CG, Doc. 171 at 10 (D.N.M. Dec. 18, 2019) (unpublished) (explaining "there is no precise measurement of the amount of detail required in an expert report," but rather "the standard in each individual case is informed by the general aims of Rule 26(a)(2)").

In sum, the Court finds that Dr. Small's conclusions and the bases for them are readily apparent from the face of his original report. Moreover, any additional criteria Defendant sought to ascertain concerning Dr. Small's report should have been properly fleshed out by counsel at a deposition, or it may now be done through cross examination at trial. *See King v. USA*, CV No. 15-480 JCH/CG, Doc. 71 at 3 (citing *Ciomber v. Coop. Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("Rule 26(a)(2) serves to provide opposing counsel notice as to what an expert witness will testify, whether at trial or at a deposition.")).

However, and while not explicitly argued by Defendant, to the extent that Dr. Small's report fails to comply with Rule 26(a)(2)(B)(v), requiring a list of all cases in which he testified as an expert over the last four years, Ms. Salzman is ordered to supplement this list no later than fourteen days from entry of this Order. *See* (Doc. 54 at 6) ("Despite Defendant's express request, Plaintiff has never provided a list of prior testimony for the full four years"). If Dr. Small is not able to obtain these records from his prior practice after asserting due diligence, he may attest to his efforts to obtain the relevant information in an affidavit. In all other respects, Defendant's argument that Dr. Small's report is deficient under Rule 26(a)(2)(B) is denied.

### b. Plaintiff's Expert Dr. Dustin L. Richter

Next, Defendant argues Ms. Salzman's treating physician, Dr. Richter, was improperly disclosed pursuant to Rule 26(a)(2)(C). (Doc. 54 at 9). In response, Ms. Salzman admits that she "did neglect to identify Dr. Richter" in her expert disclosure, but she alleges that error was harmless. (Doc. 59 at 10). Indeed, Ms. Salzman argues, Defendant knew that Dr. Richter may be called as an expert to testify "concerning the applicable standard of care for orthopedic surgeons," and Defendant will therefore not suffer any prejudice or unfair surprise if Dr. Richter is permitted to testify at trial. *Id.*

Pursuant to Rule 26(a)(2)(C), a non-retained expert witness must disclose "(i) the subject matter on which the witness is expected to present evidence," and "(ii) a summary of the facts and opinions to which the witness is expected to testify." Importantly, a non-retained expert physician may only testify about the scope of his actual care and treatment of the patient — he cannot render opinion testimony concerning the appropriateness of the care and treatment the patient generally received. *Skarda*, 2014 WL 12792345, at *3. This requirement confines a non-retained expert witness' testimony to opinions formed based on "his personal knowledge," and not the extraneous review of records or evidence in anticipation of litigation. *Farris v. Intel Corp.*, 493 F.Supp. 2d 1174, 1180 (D.N.M. 2007).

As a preliminary matter, Dr. Richter is a non-retained expert. *See* (Doc. 59 at 10) (Plaintiff's brief citing Rule 26(a)(2)(C) as Dr. Richter's intended disclosure). As a result, Dr. Richter is only permitted to testify regarding his first-hand knowledge and experience that he accumulated from treating Ms. Salzman, not his medical opinion on the care she received while a patient at the VA. *See Farris*, 493 F.Supp. 2d at 1180 (explaining that non-retained expert treating physician may testify to opinions "formed

based on his personal knowledge and observations obtained during his course of care and treatment of Plaintiff" and not to "any opinion formed based on information learned outside of, and not related to, Plaintiff's treatment").

To the extent that Ms. Salzman argues "Dr. Richter may also be asked to testify concerning the applicable standard of care for orthopedic surgeons and whether such standard was breached by defendants," this testimony falls outside the scope of that allowed from a non-retained expert witness. *See* (Doc. 54-5 at 2); *see also Seeley v. Home Depot U.S.A., Inc.*, 2018 WL 4275375, at *2, n. 5 (D. Col. Sept. 7, 2018) (unpublished) (explaining that a treating physician may testify on the basis of his personal knowledge of the treatment of a patient, even if it extends to opinions regarding causation and prognosis, but, the "opinions regarding causation and prognosis [cannot] go beyond the treating physician's personal knowledge and treatment of the patient"). If Ms. Salzman wanted Dr. Richter to opine on the substance of the treatment she received at the VA orthopedic clinic, he should have submitted an expert report and been properly disclosed as a Rule 26(a)(2)(B) expert.

Having determined the proper contours upon which Dr. Richter may testify, and establishing that all parties agree to his intended purpose as a non-retained treating physician, the question is whether he was properly disclosed under Rule 26(a)(2)(C), and if not, whether that non-disclosure was harmless or substantially justified under Rule 37. Ms. Salzman appears to concede that Dr. Richter was not properly disclosed and moves directly to an explanation of how that non-disclosure is harmless. *See* (Doc. 59 at 10) ("Plaintiff's omission of identification of Dr. Richter as a Rule 26(a)(2)(C) expert should be deemed harmless."). Armed with this concession, the Court will

conclude that Dr. Richter's disclosure was deficient and will analyze whether this non-disclosure should preclude him from testifying at trial.

In determining whether the non-disclosure of Dr. Richter was harmless or substantially justified, the Court is guided by the four factors articulated by the Tenth Circuit Court of Appeals in *Jacobsen*, 287 F.3d at 953. Under the first factor, the Court is instructed to examine the potential prejudice Defendant has or will suffer as a result of Ms. Salzman's admitted non-disclosure. *Jacobsen*, 287 F.3d at 953. Ms. Salzman contends Defendant will not suffer any prejudice because she expressed her intent to utilize the testimony of Dr. Richter on three prior occasions: first in the parties' Joint Status Report submitted to the Court on March 26, 2019; again in her initial disclosures on April 18, 2019; and finally in her response to Defendant's request for production. (Doc. 59 at 10).

Specifically, in the parties' March 26, 2019, Joint Status Report, Ms. Salzman explained, in pertinent part:

> Dr. Richter is an orthopedic surgeon who can testify about care provided to Ms. Salzman when she presented to [University of New Mexico Hospital] subsequent to her care related to her knee at [the VA], as well as the necessity for further medical care to treat the infection and related issues.

(Doc. 19 at 10). Next, in her April 18, 2019, initial disclosures, Ms. Salzman repeated the language from the parties' Joint Status Report in explaining the scope of Dr. Richter's testimony. (Doc. 54-5 at 2). Then, in response to Defendant's request for production, Ms. Salzman directed Defendant to a letter from Dr. Richter that she had previously produced in discovery. (Doc. 54-6 at 2). This letter, in relevant part, details Dr. Richter's treatment of Ms. Salzman, the difficulty her knee injury will cause in the future, and her current medical status. (Doc. 54-7 at 1-2) (explaining that as a result of

"significant arthrofibrosis secondary to scar tissue," Ms. Salzman was sent to Dr. Richter for an evaluation, and he performed additional testing and surgical procedures on her knee under anesthesia).

These three prior disclosures are sufficient to advise Defendant of the use of Dr. Richter's testimony at trial, such that any prejudice Defendant would have suffered by virtue of Ms. Salzman's non-disclosure has been mitigated. *See Farris*, 493 F. Supp. 2d at 1178-80 (permitting expert to testify as a Rule 26(a)(2)(C) treating physician because, *inter alia*, the plaintiff had identified the physician in the initial pre-trial report and in the patient's disclosed medical records). Ms. Salzman adequately set forth the scope of Dr. Richter's predicted testimony, including the specific care and treatment he provided, and his personal observations resulting from Ms. Salzman's evaluation. *See* (Doc. 54-7 at 1-2) (explaining that Dr. Richter conducted a "left knee extensive arthroscopic lysis of adhesions with manipulation," and since this procedure, "Ms. Salzman has improved significantly"). As a result, Defendant will not suffer any unfair surprise or prejudice by the inclusion of Dr. Richter's testimony. *See Walker v. Spina*, 2019 WL 145626, at *10 (D.N.M. Jan. 9, 2019) (unpublished) (collecting cases) ("When a party has time to respond to the information in an untimely disclosure or expert report, or when the party already knew of the information, the Court is less likely to conclude that the party has been prejudiced, that the prejudice is incurable, or that the trial will be disrupted.").

Notwithstanding the Court's conclusion that Defendant will not be prejudiced by Dr. Richter's expected testimony at trial, the Court further notes that Ms. Salzman diligently sought to remedy her non-disclosure by explaining her omission to Defendant and providing Dr. Richter's letter in discovery. *See* (Doc. 59 at 10-11); *see Jacobsen*, 287 F.3d at 953 (explaining the Court may also consider "the ability of the party to cure

the prejudice"). Having found Defendant will not suffer prejudice if Dr. Richter is permitted to testify as a treating physician, the Court also concludes that trial will not be disrupted by this holding. *See id.* (explaining the Court should consider any potential disruption to trial when determining if an expert's non-disclosure is harmless). Most notably, Defendant has over four months to prepare for effective cross-examination and questioning of Dr. Richter's treatment plan and diagnosis, in addition to the year that has already passed since the inception of this litigation. Finally, the Court finds that Ms. Salzman did not act in bad faith in failing to disclose Dr. Richter. Rather, she was forthcoming with the Court that she failed to identify him, and she has worked diligently to rectify her mistake.

In conclusion, the Court finds that Dr. Richter may testify as a treating physician under Rule 26(a)(2)(C). The Court further finds that Dr. Richter's expert disclosure was deficient, but that deficiency was harmless. Specifically, Ms. Salzman advised Defendant of her intent to call Dr. Richter on three separate occasions, which, taken together, adequately set forth the "subject matter" on which he is expected to testify, and a "summary of the facts and opinions" to which he will opine. *See* Rule 26(a)(2)(C)(i), (ii). As a result, to the extent Defendant argues Dr. Richter's testimony is limited to that of a non-retained treating physician, this request is granted. In all other respects, Defendant's Motion to exclude the testimony of Dr. Richter is denied.

### B. Admissibility of Expert Testimony

Defendant next argues the testimony of both Dr. Small and Dr. Richter should be deemed inadmissible under Federal Rule of Evidence 702. (Doc. 54 at 14). Specifically, Defendant contends Dr. Small's expert report is not reliable because his opinions are unsupported by founded principles or methodologies. *Id.* at 14-15. Similarly, Defendant

argues Dr. Richter's affidavit provides only "bald, unsupported conclusions." *Id.* at 15-16. In response, Ms. Salzman contends Defendant's challenge to Dr. Small's report "goes to the weight" of his testimony, not its admissibility. (Doc. 59 at 7). Furthermore, while Ms. Salzman does not directly address the admissibility of Dr. Richter's testimony under Rule 702, she contends "the matters in question are simply those of clinical judgment as opposed to highly technical medical procedure[s]." (Doc. 59 at 1).

Federal Rule of Evidence 702 imposes a "gatekeeping" function on the Court with regard to the admissibility of expert opinions. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)). The Court's gatekeeping responsibility involves a two-step analysis. *Milne v. USA Cycling Inc.*, 575 F.3d 1120, 1134 (10th Cir. 2009). First, the Court must determine that the expert is "qualified" by "knowledge, skill, experience, training, or education." *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004) (citing Fed. R. Evid. 702). The "qualification" requirement also includes a mandate that the expert's testimony be "relevant" to the issues before the Court. *Daubert*, 509 U.S. at 591. Second, the Court must determine whether the expert's opinions are "reliable," as dictated by the United States Supreme Court in *Daubert*, 509 U.S. at 593-94. The Court must determine that evidence is both relevant and reliable for an expert's testimony to be admissible. *Milne*, 575 F.3d at 1134.

### a. Admissibility of Dr. Small's Testimony

Dr. Small presents seven conclusions at the close of his report. *See* (Doc. 54-2 at 6). Defendant's arguments concerning Dr. Small's proposed testimony largely challenge the reliability of his conclusions under *Daubert*, 509 U.S. at 595. (Doc. 54 at 14). However, Defendant does contest that, as an orthopedic surgeon, Dr. Small is not

qualified to render an opinion on the necessity of Ms. Salzman undergoing cosmetic surgery to reverse the cosmetic damage to her left knee. *See id.* While Ms. Salzman outlines Dr. Small's thirty-five years of experience as an orthopedic surgeon, she does not address his qualifications pertaining to cosmetic procedures. *See* (Doc. 59).

Absent any argument from Ms. Salzman explaining Dr. Small's qualifications in this specialized area of medical study, the Court will strike Dr. Small's opinion that Ms. Salzman may require cosmetic surgery. *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1310, 1315 (N.D. Ok. 2000) (disqualifying physician because the "plaintiff [made] no attempt to demonstrate [the doctor's] qualifications in [] specialized areas but rather relie[d] on her assertion that [the doctor's] medical degree is qualification enough" and explaining that "a blanket qualification for all physicians to testify as to anything medically-related would contravene the Court's gate-keeping responsibilities"). Simply put, Ms. Salzman has not proffered any evidence to demonstrate that Dr. Small is qualified to opine on matters outside of his general orthopedic practice. *See Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (explaining that an expert must "stay within the reasonable confines of his subject area").

In all other respects, Defendant does not challenge that Dr. Small is sufficiently qualified to opine on the medical treatment provided by the VA to treat Ms. Salzman's knee injury. *See* (Doc. 54 at 14). Instead, Defendant's arguments attack the reliability of Dr. Small's report, and specifically that he does not proffer "any proof" to support his conclusions. *Id.* at 15. In response, Ms. Salzman contends Dr. Small's opinions are based on his clinical judgment, and his thirty-five years of experience in the orthopedic surgery field. (Doc. 59 at 2). Indeed, Ms. Salzman argues "there is no need to rely on

learned treatises, studies, or any other specialized material," because Dr. Small's opinions are not a matter "for highly technical, scientific inquiry." *Id.*

An expert's testimony may be deemed reliable if he bases his testimony upon "professional studies or personal experience," so long as he "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd.*, 526 U.S. at 152. The trial court may employ "broad latitude" in determining whether *Daubert's* specific factors are a "reasonable measure[] of reliability in a particular case." *Id.* at 153. Indeed, "an expert might draw a conclusion from a set of observations based on extensive and specialized experience." *Id.* at 156. This requires the Court to "decide whether this particular expert ha[s] sufficient specialized knowledge to assist the jurors in deciding the particular issues in this case." *Id.*

While Defendant contends the principles of *Daubert* must be rigidly applied to Dr. Small's report, such a formulaic compliance with the factors articulated is plainly not required. *U.S. v. Avitia-Guillen*, 680 F.3d 1253, 1258 (10th Cir. 2012) ("A district court need not recite the Daubert standard as though it were some magical incantation … Nor need it apply all of the reliability factors suggested in *Daubert* and *Kumho*."). Rather, "a patient's medical records and personal history are adequate evidence upon which a physician may base a clinical opinion." *Hiller v. Fletcher*, 2004 WL 7337802, at *7 (D.N.M. 2004) (unpublished). Indeed, "many cases have relied upon the experience of an expert to conclude that their testimony is scientifically valid." *Id.* at *8 (collecting cases). As such, a Court may conclude that an expert's testimony is reliable if his testimony is "grounded in experience in his field and he has explained how his conclusions are so grounded." *Id.*

Here, Dr. Small explained that he reviewed the reports of twelve physicians who treated Ms. Salzman. (Doc. 54-2 at 1-2). In addition, Dr. Small has "thirty-five years of orthopedic surgery and spine practice," and "extensive forensic experience, having provided considered opinions on over 550 legal cases involving the musculoskeletal system." *Id.* at 1; (Doc. 54-3 at 1) ("The other modification to his report is his clarification of reference to his extensive experience in orthopedic surgery as basis for his opinions as applied to his review of the materials provided (medical records, and now, Dr. Skelly's deposition)."). Dr. Small "relied on [Ms. Salzman's] medical history and his knowledge of [orthopedic surgery] to support his conclusions." *See Hiller*, 2004 WL 7337802, at *8. Indeed, Dr. Small's "reliance upon his substantial experience in the field [] provides a sufficient foundation for his expert testimony. His testimony is grounded in experience in his field and he has explained how his conclusions are so grounded." *See id.* As a result, Dr. Small's opinions are scientifically valid and reliable, having employed the "type of data and methodology relied upon [by] doctors typically in reaching opinions in their practice of clinical medicine." *See id.* at *9.

In conclusion, Dr. Small's testimony is sufficiently reliable pursuant to the principles articulated in *Daubert*, because of his extensive orthopedic surgery experience and reliance on his review of records and data to render a clinical opinion. As a result, Defendant's argument that Dr. Small's testimony fails to satisfy Rule 702 is denied. However, because Ms. Salzman does not explain how Dr. Small is qualified to opine on her need for cosmetic surgery, Dr. Small may not testify on the necessity of Ms. Salzman undergoing any future cosmetic procedures.

### b. Admissibility of Dr. Richter's Testimony

In its final argument, Defendant contends Dr. Richter's testimony is unreliable under Federal Rule of Evidence 702. (Doc. 54 at 15-16). Specifically, Defendant argues Dr. Richter's affidavit contains "noting more than bald, unsupported conclusions," and the Court therefore "has no means by which to evaluate the reliability of his conclusions." *Id.* In her Response, Ms. Salzman does not directly address how Dr. Richter's testimony satisfies the admissibility requirements of Rule 702. *See* (Doc. 59). Nonetheless, Dr. Richter's affidavit demonstrates his testimony is reliable, and the Court will therefore admit his testimony.

In his letter, Dr. Richter explains that "Ms. Salzman has been under [his] care at the University of New Mexico since January 20, 2017." (Doc. 54-7 at 1). Dr. Richter then continues, explaining that he treated Ms. Salzman for "significant arthrofibrosis secondary to scar tissue," following her "complicated history of multiple surgeries on the left knee – primarily done at the VA Hospital." *Id.* Dr. Richter explains that given his findings at Ms. Salzman's initial evaluation, he recommended "proceeding to the operating room for left knee extensive arthroscopic lysis of adhesions with manipulation under anesthesia." *Id.* Following this procedure, Dr. Richter again evaluated Ms. Salzman's condition and found "her motion is much improved from about 5 degrees short of full extension [before the surgery] to 130 degrees of flexion." *Id.* Dr. Richter then closes his letter by explaining that Ms. Salzman suffered "some long-term cartilage damage," as a result of the scar tissue from the infection and surgery, and he recommended that she "avoid high impact activities." *Id.* at 1-2.

Having determined that Dr. Richter may only testify within the scope of a non-retained treating physician, the Court narrows its *Daubert* inquiry to determine if his

statements regarding Ms. Salzman's care and treatment are reliable. Dr. Richter's affidavit contains sufficient information concerning his treatment of Ms. Salzman and his review of her medical history. Notably, Dr. Richter's affidavit allows Defendant the ability to analyze his opinions, asses Ms. Salzman's post-operative treatment plan, and determine the credibility of his findings. In addition, Dr. Richter's affidavit identifies Ms. Salzman's injury through the use of specific identifiable facts and methodology, namely his evaluation of her knee injury and review of her prior medical history. (Doc. 54-7 at 1). Importantly, "concerns surrounding the proper application of the methodology typically go to the weight and not admissibility, and questions surrounding an expert's use of the best or most reliable methodologies are for the finder of fact to decide." *Murphy-Sims v. Owners Insurance Co.*, 2018 WL 8838811, at *7 (D. Col. Feb. 27, 2018) (unpublished). Defendant's objections are better addressed through cross examination, rebuttal expert testimony, and the presentation of contrary evidence. Therefore, after laying the proper foundation at trial, Dr. Richter's testimony shall be admitted.

### III.   Conclusion

In conclusion, the Court makes the following findings (1) Dr. Small's expert witness disclosure and report were not deficient under Rule 26(a)(2)(B); (2) Dr. Richter's disclosure was deficient under Rule 26(a)(2)(C), but that deficiency was harmless; and (3) Dr. Small and Dr. Richter's testimony is reliable under Federal Rule of Evidence 702. As a result of these findings, the Court holds Defendant United States of America's *Motion in Limine to Exclude Expert Testimony*, (Doc. 54), is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS THEREFORE ORDERED** that (1) Dr. Small must provide Defendant a list of all cases in which he testified as an expert over the last four years, pursuant to Rule

26(a)(2)(B)(v), within fourteen days of entry of this Order, or, if he is unable to compile a complete list, he may attest to his efforts to obtain the information in an affidavit; (2) Dr. Small is not qualified to render testimony on Ms. Salzman's need for cosmetic surgery, and this testimony shall be stricken from his report and excluded at trial; and (3) Dr. Richter may only testify as a non-retained treating physician under Rule 26(a)(2)(C), and he must confine his testimony at trial to the proper scope.

**IT IS SO ORDERED**.

_____

THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE