IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

HOLLY SALZMAN,

    Plaintiff,

v.                                                    CV No. 18-779 CG/LF

UNITED STATES OF AMERICA,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Plaintiff Holly Salzman's *Motion for Partial Summary Judgment Establishing Negligence of Dr. William Skelly in Failing to Send Fluid Aspirated from Plaintiff Holly Salzman's Knee for Laboratory Analysis* ("Ms. Salzman's Motion"), (Doc. 53), filed November 5, 2019; Defendant United States of America's *Response to Plaintiff's Motion for Partial Summary Judgment (Doc. 53)* ("Defendant's Response"), (Doc. 55), filed November 19, 2019; and Ms. Salzman's *Reply on Motion for Partial Summary Judgment Establishing Negligence of Dr. William Skelly in Failing to Send Fluid Aspirated from Plaintiff Holly Salzman's Knee for Laboratory Analysis* ("Ms. Salzman's Reply"), (Doc. 57), filed December 10, 2019.

This matter is also before the Court on Defendant's *Motion for Summary Judgment* ("Defendant's Motion"), (Doc. 56), filed November 19, 2019; Ms. Salzman's *Response in Opposition to Defendant's Motion for Summary Judgment* ("Ms. Salzman's Response"), (Doc. 60), filed December 10, 2019; and Defendant's *Reply to Plaintiff's Response (Doc. 60) to Motion for Summary Judgment* ("Defendant's Reply"), (Doc. 64), filed December 20, 2019.

In accordance with Federal Rule of Civil Procedure 73(b), all parties have consented to the Undersigned to conduct dispositive proceedings and issue a final judgment in this matter. *See* (Doc. 17); 28 U.S.C. § 636(c). Having reviewed the parties' filings and the relevant law, the Court finds Ms. Salzman's Motion, (Doc. 53), is not well-taken and shall be **DENIED**. The Court further finds Defendant's Motion, (Doc. 56), is not well-taken and shall be **DENIED**.

**I.    Introduction**

This case arises from medical care Plaintiff Holly Salzman received from the Raymond G. Murphy Medical Center (the "VA") in late October and early November 2016. (Doc. 1 at 2-3). Ms. Salzman filed this lawsuit against Defendant United States of America pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671, alleging medical malpractice. *Id.* at 2. Specifically, Ms. Salzman alleges the VA physicians failed to diagnosis and treat her knee infection, resulting in septic shock and septic arthritis in her left-knee joint. *Id.* at 8. In addition, Ms. Salzman claims she will need future knee-replacement surgery because of the VA physicians' failure to properly diagnosis and treat her knee pain, and her life has been "drastically altered" as a result of the VA physicians' malfeasance. *Id.* at 10-11.

After the close of discovery on October 30, 2019, this case was set for trial in Albuquerque, New Mexico, and is scheduled to begin on April 21, 2020. (Doc. 49). On December 30, 2019, the Court granted in part and denied in part Defendant's *Motion in Limine to Exclude Expert Testimony*, (Doc. 54). Relevant to this Motion, the Court denied Defendant's attempt to strike Ms. Salzman's retained expert, Dr. Neil C. Small, MD, and her treating physician, Dr. Dustin Richter, MD, from testifying at trial. (Doc. 66).

However, the Court limited Dr. Small's testimony to exclude any opinion on Ms. Salzman's need for cosmetic surgery, and further concluded that Dr. Richter may only testify within the scope of a non-retained treating physician under Rule 26(a)(2)(C). *Id.* at 21. In all other respects, the Court denied Defendant's motion to exclude Ms. Salzman's experts. *Id.*

The parties have now each filed a motion for summary judgment, alleging they are entitled to judgment as a matter of law on Ms. Salzman's medical malpractice claim. (Doc. 53 at 7); (Doc. 56 at 1). In support of her Motion, Ms. Salzman contends her expert, Dr. Small, has sufficiently demonstrated that the VA physicians should have tested her knee aspirate for infection, and their repeated failure to heed her concerns resulted in a delayed diagnosis. (Doc. 60 at 11). In both its Response and its cross-motion for summary judgment, Defendant argues Ms. Salzman has failed to articulate a standard of care, and she fails to proffer any evidence of how the VA physicians' conduct departed from that standard. (Doc. 55 at 9-11). In addition, Defendant contends Ms. Salzman's expert testimony lacks evidence of a causal connection between her injury and the VA physicians' conduct. *Id.* Therefore, Defendant argues, Ms. Salzman cannot establish negligence as a matter of law and, thus, summary judgment must be granted in its favor. *Id.* at 14.

**II.     Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it could have an effect on the outcome of the lawsuit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014)

3

(citation omitted). A dispute over a material fact is "genuine" if the evidence presented could allow a rational jury to find in favor of the non-moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (internal citation omitted). In considering a summary judgment motion, the court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in his or her favor. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007).

A party seeking summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the movant does not have the burden of persuasion at trial, it can satisfy its burden at the summary judgment stage by identifying a lack of evidence on an essential element of the claim. *Id.* at 671. If the party seeking summary judgment satisfies its burden, the burden then shifts to the non-movant. *Id.*

The party opposing summary judgment cannot rest on the pleadings but must "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colo.*, 218 F.3d 1205, 1209 (10th Cir. 2000). The non-movant must set forth specific facts from which a rational trier of fact could find in the non-movant's favor, identifying those facts in affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671. The party cannot rest on ignorance of the facts, speculation, or unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1126 (10th Cir. 2003). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial,

much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008).

### III.     Undisputed Material Facts

The parties agree on the following undisputed material facts, presented in chronological order. Ms. Salzman began seeking treatment for left-knee pain in late 2010 and early 2011. (Doc. 56 at 3); (Doc. 60 at 2). Over the years, Ms. Salzman underwent a series of medical procedures, but after each procedure, her knee pain would return. *Id.* Since 2015, Ms. Salzman's knee pain has limited her ability to participate in physical and recreational activities, including running. *Id.*

On August 19, 2016, Ms. Salzman had surgery at the VA for a "fat-pad debridement" of her left knee. (Doc. 53 at 2); (Doc. 55 at 4). Shortly thereafter, on October 20, 2016, Ms. Salzman underwent a second surgery at the VA to remove a Baker's cyst from behind her left knee. (Doc. 56 at 4); (Doc. 60 at 2). Ms. Salzman acknowledged the risk of infection, requiring possible antibiotic treatment or further surgery, before undergoing the procedure. *Id.*

On October 31, 2016, Dr. Paul Johnson, MD, treated Ms. Salzman at the VA for a post-operative partial dehiscence of her incision. *Id.* Dr. Johnson prescribed an antibiotic, directed Ms. Salzman to continue using a knee immobilizer, and instructed her to return in a week for a wound check. *Id.* Ms. Salzman returned to the VA on November 4, 2016, before her scheduled follow-up appointment, and expressed concern that her knee may be infected. (Doc. 53 at 3); (Doc. 55 at 5). Dr. Johnson, under the supervision of Dr. William Skelly, MD, irrigated Ms. Salzman's wound. *Id.*

On November 7 and November 9, 2016, Ms. Salzman again returned to the VA with a "large [] left knee effusion," complaining of knee pain. (Doc. 56 at 4); (Doc. 60 at 2-3). On November 7 and November 9, 2016, the VA physicians aspirated Ms. Salzman's knee fluid, provided her with follow-up care instructions, and discharged her from the VA clinic. *Id.* Instead of sending Ms. Salzman's knee aspirate for further laboratory analysis, Dr. Skelly discarded the aspirate in the sink. (Doc. 53 at 4); (Doc. 55 at 6). Ms. Salzman contends that during these visits, the VA physicians repeatedly ignored her concerns of infection, despite her knee appearing "hot to [the] touch, swollen, and painful." (Doc. 60 at 3); (Doc. 64 at 1) (disputed). Defendant, however, maintains that on November 7 and November 9, 2016, the VA physicians found "no suggestion of infection," and their decision to not test Ms. Salzman's knee aspirate was reasonable in light of the circumstances. (Doc. 56 at 4); (Doc. 60 at 2-3) (disputed).

After the November 9, 2016, VA visit, Ms. Salzman sought treatment at the University of New Mexico Hospital Emergency Room for persistent left knee pain and swelling. (Doc. 56 at 5); (Doc. 60 at 2). At the hospital, Ms. Salzman's knee was aspirated, and hospital staff determined that "her cytology is most consistent with inflammatory changes." *Id.* After sending her knee fluid for laboratory testing, Ms. Salzman was prescribed pain medication and discharged from the emergency room. *Id.* On November 15, 2016, Ms. Salzman was called back to the hospital after her prior knee aspirate showed "a very rare growth of staph epidermis." *Id.* After retesting her knee aspirate, Ms. Salzman was diagnosed with septic arthritis. *Id.*

Following her diagnosis at the hospital, Ms. Salzman underwent two "left open irrigation and debridement[s]" of her knee and was prescribed six weeks of IV

antibiotics. (Doc. 56 at 5); (Doc. 60 at 2). In addition, Ms. Salzman sought physical therapy to improve her knee function, and subsequently underwent an "arthroscopic lysis of adhesions." *Id.* Ms. Salzman experienced consistent improvement in her knee mobility until the end of 2017. *Id.* However, in March 2018 her condition regressed because of a bone chip in the back of her kneecap, and she began to experience daily knee pain. *Id.* Shortly thereafter, Ms. Salzman filed this lawsuit. *See* (Doc. 1).

IV. **Analysis**

The Federal Tort Claims Act incorporates the substantive tort law of the location where the incident occurred. *Miller v. U.S.*, 463 F.3d 1122, 1123 (10th Cir. 2006). Consequently, the Court must refer to New Mexico state law regarding medical malpractice to resolve Defendant's Motion. *See id.* ("In other words, we look to state law to resolve questions of substantive liability."). To sustain a medical malpractice action in New Mexico, the plaintiff must demonstrate: (1) "the defendant owed the plaintiff a duty recognized by law;" (2) "the defendant breached the duty by departing from the proper standard of medical practice recognized in the community;" and (3) "the acts or omissions complained of proximately caused the plaintiff's injuries." *Brown v. Kellogg*, 340 P.3d 1274, 1275 (NM Ct. App. 2014). The first element, the existence of a medical duty, is a question of law. *Blake v. Public Service Co. of New Mexico*, 82 P.3d 960, 962 (NM Ct. App. 2003) ("The only issue in this appeal is whether or not [defendant] owed a duty to Plaintiff, which is a legal question []"). The remaining two elements, requiring breach and causation, are generally fact questions for the jury to determine, unless reasonable minds can draw only one conclusion. *Pioneer Centres Holding Co.*

*Employee Stock Ownership Plan and Trust v. Alerus Financial, N.A.*, 858 F.3d 1324, 1333-34 (10th Cir. 2017).

The parties do not contest that as Ms. Salzman's doctors, the VA physicians owed Ms. Salzman a duty recognized by law. *See Nez v. U.S.*, 367 F. Supp. 3d 1245, 1265 (D.N.M. 2019) ("In New Mexico, healthcare providers and doctors owe patients a duty to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified doctors and healthcare providers practicing under similar circumstances, giving due consideration to the locality involved.") (internal citations and brackets omitted). Instead, the parties' arguments focus on the remaining two elements of Ms. Salzman's medical malpractice claim: breach and causation. Importantly, the parties present nearly identical arguments in their response briefs and their respective motions for summary judgment. As a result, the Court will address the motions together, assessing the facts in the light most favorable to the non-moving party for each respective motion.

**A. Element of Breach**

To establish that a physician's conduct breached the standard of care, the plaintiff's burden is two-fold. First, the plaintiff must present testimony regarding the applicable standard of care. *Richter v. Presbyterian Healthcare Servs*, 326 P.3d 50, 64 (N.M. Ct. App. 2014). Second, the plaintiff must demonstrate that the physician's conduct fell below that standard. *Id.* Ordinarily, in a medical malpractice action, a plaintiff must demonstrate breach of the standard of care by using expert testimony. *Nicholson v. Evangelical Lutheran Good Samaritan Society, Inc.*, 2017 WL 3127799, at *28 (D.N.M. July 21, 2017) (unpublished). As such, the New Mexico Uniform Jury

Instructions direct jurors to assess whether the physician "possessed and applied the knowledge and used the skill and care which the law required of him" supported by "evidence presented in this trial by doctors testifying as expert witnesses." NMRA Civ. UJI 13-1101.

### a. Standard of Care

In its Motion, Defendant first contends Ms. Salzman has not presented any competent evidence for the factfinder to ascertain the standard of care that governed Dr. Skelly's conduct. (Doc. 56 at 12). In support of this assertion, Defendant cites the conclusions reached by its expert witness, Dr. James Van den Bogaerde, MD. *Id.* Specifically, Dr. Van den Bogaerde explained in his expert report that "[t]he decision to send a particular aspirate to the lab for testing is not governed by any rule or guideline, but is a matter of clinical judgment." (Doc. 53-3 at 3). Relying on Dr. Van den Bogaerde's conclusions, Defendant argues Ms. Salzman cannot demonstrate that any standard of care governed Dr. Skelly's conduct or was otherwise well-known in the field of orthopedic medicine. (Doc. 56 at 12).

Defendant's argument is satisfactory to overcome its burden at the summary judgment stage, by "putting evidence into the record that affirmatively disproves an element of the nonmoving party's case." *See Nicholson*, 2017 WL 3127799, at *21; *Richter*, 326 P.3d at 64 (explaining that because the physician "explained [] there was no standard practice that [a physician] would use [under the circumstances]," the physician "could not indicate whether [the defendant doctor] was negligent" in treating the plaintiff for purposes of proving the medical malpractice claim). Consequently, the burden then shifts to Ms. Salzman as the nonmovant to designate "specific facts" from

which a rational trier of fact could find in her favor. *See Adler*, 144 F.3d at 671. Ms. Salzman cites her own expert witness, Dr. Small, to demonstrate a genuine dispute over whether a standard practice exists for sending aspirated fluid for laboratory testing in the field of orthopedic medicine. *See* (Doc. 60 at 12).

Despite Defendant's contention that Ms. Salzman's expert fails to identify the relevant standard of care, (Doc. 56 at 12), the Court has already concluded that Dr. Small may testify at trial. (Doc. 66). While Dr. Small did not expressly utilize the phrase "standard of care" in his report, his analysis and conclusions are sufficient to establish his opinions on the standard of care that governed Dr. Skelly's conduct. For example, Dr. Small explained in his report that: Ms. Salzman's complaints of pain and swelling "were ignored or marginalized" by the VA physicians; "by discarding the knee aspirate on November 7, 2016, [the VA physicians] delayed the identification of the septic arthritis condition"; and therefore, the VA physicians' inaction delayed remedial treatment for Ms. Salzman's infection. (Doc. 54-2 at 6).

Ms. Salzman's reliance on Dr. Small's expert report is sufficient to demonstrate a colorable dispute over the standard of care applicable to Dr. Skelly's conduct, or whether such a standard of care exists. *See Alder*, 144 F.3d at 671 (explaining that the non-movant must rely on facts in "affidavits, deposition transcripts, or incorporated exhibits" to establish the existence of an essential element of her case); *Nicholson*, 2017 WL 3127799, at *22 (explaining "there must be sufficient evidence on which the fact finder could reasonably find for the nonmoving party" to defeat a claim for summary judgment). The Court will therefore deny Defendant's request for summary judgment on the appropriate standard of care because Ms. Salzman has presented competent expert

testimony from which a rational trier of fact may return a verdict in her favor. *Nicholson*, 2017 WL 3127799, at *38 (denying summary judgment because the plaintiff "produced evidence from which a reasonable juror could conclude by a preponderance of the evidence" that her medical malpractice claim was adequately supported).

This conclusion is consistent with the level of evidence required by other courts to defeat a motion for summary judgment in the medical malpractice context. *See contra Holley v. Evangelical Lutheran Good Samaritan Society*, 2013 WL 12080313, at *4, 6 (D.N.M. March 11, 2013) (unpublished) (granting summary judgment for the defendant "because [the plaintiffs] have not identified exactly what Defendant did or failed to do that was improper," and "[g]iven the lack of any qualified evidence" as to the appropriate standard of care, the defendant established a "lack of evidence" on the plaintiff's medical malpractice claim); *Elevario v. Hernandez*, 2011 WL 13289640, at *5 (D.N.M. Aug. 15, 2011) (unpublished) (granting summary judgment for the defendant because the plaintiff proffered "absolutely no evidence of what [the particular medical] standards are or what constitutes a breach," and as a result, "the evidence before the Court [was] not sufficient to enable a trier of fact to find that [the defendant doctor] departed from recognized standards of medical practice"). As such, Defendant's request for summary judgment on the element of breach shall be denied.

### b. Breach of the standard of care

Next, in her Motion, Ms. Salzman argues she is entitled to summary judgment on the element of breach because there is no genuine dispute that Dr. Skelly's conduct fell below the applicable standard of care. (Doc. 53 at 7). Indeed, Ms. Salzman contends that both her retained expert and the expert retained by Defendant agree that Dr. Skelly

should have sent her knee aspirate for laboratory testing. *Id.* ("There being no dispute that Dr. Skelly should have sent the aspirate for analysis, there exists no issue of material fact to resolve[] in that regard and no reasonable dispute as to whether Dr. Skelly met the applicable standard of care"). Specifically, Dr. Van den Bogaerde opined that Ms. Salzman's "knee aspirate should have been sent for cultures to screen for infection." (Doc. 53-3 at 3). Similarly, Dr. Small opined that "by discarding the knee aspirate on November 7, 2016, Dr. Skelly [] delayed the identification of the septic arthritis condition." (Doc. 53-5 at 2).

While both experts opined that Dr. Skelly should have tested the knee aspirate for infection, the issue of whether such a course of conduct was the applicable "standard" in the medical community has not been resolved. *See infra*, *a. Standard of Care.* Indeed, the factfinder must first establish that such a standard existed before it may conclude that the standard has been breached. *See* NMRA Civ. UJI 13-1101 (instructing the jury to consider whether the defendant was negligent after assessing the "skill and care ordinarily used by reasonably well-qualified doctors practicing under similar circumstances," using expert testimony). In light of the competing expert evidence on a physician's standard of care under the applicable circumstances, Ms. Salzman's request that the Court resolve the issue of breach in her favor must be denied. *See Elevario*, 2011 WL 13289640, at *5 (explaining that absent evidence of the applicable standard of care in a medical malpractice case, the factfinder cannot determine what constitutes a breach). Instead, Ms. Salzman must first prove at trial that Dr. Skelly's conduct was governed by a standard of care, and that standard was

breached when he failed to send her knee aspirate for laboratory testing. Accordingly, Ms. Salzman's request for summary judgment is properly denied.

### B. Element of Causation

To prove causation, a plaintiff must demonstrate "by a preponderance of the evidence" that the defendant's negligence resulted in her injury. *Hart for Jaramillo v. Corrections Corp. of America*, 2014 WL 12689319, at *4 (D.N.M. May 6, 2015) (unpublished). In New Mexico, this standard must be established by a reasonable degree of medical probability. *Id.* While the plaintiff does not need to demonstrate "absolute certainty of causation," the plaintiff "must introduce evidence that the injury more likely than not was proximately caused by the act of negligence." *Id.* (internal citations omitted). Ordinarily, causation must be established by expert medical testimony because "the cause and effect of a physical condition lies in a field of knowledge in which only a medical expert can give a competent opinion." *Nicholson*, 2017 WL 3127799, at *29.

In its Motion, Defendant argues Ms. Salzman "has presented no expert testimony sufficient to establish causation" for purposes of her medical malpractice claim. (Doc. 56 at 13). In support of this argument, Defendant contends Ms. Salzman's "experts offer no explanation for how her outcome would have been different, but for [Defendant's] actions or inactions in treating her." *Id.* In her Response, Ms. Salzman argues Dr. Small will testify that "by not sending the fluid for analysis and not earnestly considering [her] complaints, the consequence was a substantial delay in diagnosing and treating the infection boiling in Ms. Salzman's knee." (Doc. 60 at 13). Even without considering Dr. Small's testimony, Ms. Salzman alleges the VA physicians' negligence was so "obvious"

13

that a lay person could ascertain the causal connection between her infection and the VA physicians' inaction. *Id.*; *see Mascarenas v. Gonzales*, 497 P.2d 751, 753 (N.M. Ct. App. 1972) ("[W]here negligence on the part of a doctor is demonstrated by facts which can be evaluated by resort to common knowledge, expert testimony is not required.").

Despite Defendant's argument to the contrary, the Court has already determined that Dr. Small may proffer expert testimony on the topics set forth in his report, including causation. *See* (Doc. 66 at 18) (holding "Dr. Small's testimony is sufficiently reliable pursuant to the principles articulated in *Daubert*, because of his extensive orthopedic surgery experience and reliance on his review of records and data to render a clinical opinion."). In addition, the Court reasoned that although Dr. Small does not employ the necessary legal rhetoric as requested by Defendant, he is not disqualified from discussing these matters at trial. *Id.* at 7 ("Defendant's additional objections suffer from the same fatal flaw: they view Dr. Small's conclusions in a vacuum, narrowly viewing his report and demanding that he follow the legal specificity that would be expected of an attorney.").

As a result of the Court's prior holding on Defendant's *Motion to Exclude*, (Doc. 66), Ms. Salzman has presented competent expert evidence. Indeed, relying on Dr. Small's testimony, the factfinder may reasonably find in Ms. Salzman's favor on the issue of causation. *See Nicholson*, 2017 WL 3127799, at *22. The Court notes, however, that Defendant is free to counter Dr. Small's testimony at trial and cross-examine the bases for his conclusion. At that juncture, the Court will be tasked with determining the credibility of Dr. Small, and weighing the testimony of the parties' competing experts. *See Malandris v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 703

F.2d 1152, 1158 (10th Cir. 1981) (explaining that the "very essence" of the factfinders duty at trial is to "select from among conflicting inferences and conclusions that which it considers most reasonable") (internal citation omitted). A motion for summary judgment, however, is not the proper forum for the Court to determine which of the opinions proffered by the parties' competing witnesses should be afforded greater weight.

In sum, having found Dr. Small is permitted to testify at trial, the Court finds Ms. Salzman has presented competent evidence to defeat Defendant's summary judgment argument on the issue of causation. *See Mascarenas*, 497 P.2d at 754 (explaining "the matter of proximate cause" is ordinarily a "question of fact for the jury"). The Court is not suggesting, however, that Ms. Salzman's expert testimony will avail her to a favorable outcome at trial. Rather, at trial, the Court will be tasked with determining which expert's testimony should be afforded more weight, and whether Dr. Small's testimony, in conjunction with all the evidence proffered by the parties, is sufficient to satisfy Ms. Salzman's burden of establishing causation under New Mexico law.

## V. Conclusion

In light of the foregoing, the Court finds that genuine disputes over material facts preclude either party from succeeding at the summary judgment stage. Specifically, the parties' competing expert testimony on the issues of breach and causation bar both elements from being decided absent evaluation of the evidence by the factfinder.

**IT IS THEREFORE ORDERED** that Plaintiff Holly Salzman's *Motion for Partial Summary Judgment Establishing Negligence of Dr. William Skelly in Failing to Send Fluid Aspirated from Plaintiff Holly Salzman's Knee for Laboratory Analysis*, (Doc. 53), is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant United States of America's *Motion for Summary Judgment*, (Doc. 56), is **DENIED**.

**IT IS SO ORDERED**.

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE